We will begin with hearing argument in Zbitnoff v. James Good morning Mr. Dumont Good morning. May it please this Honorable Court This morning I will argue that the EIS failed to disclose the overall cost factor relied on explicitly in the record of decision I will also argue that the EIS failed to discuss the inconsistency between the project, the proposed action, and the noise standards of Vermont's landmark land use law Supposing, this is an unusual kind of proceeding for us, certainly not for much of Washington, but for us Supposing you're right and you win, what happens then? Because ultimately you don't want those damn lousy, noisy planes in Burlington, I understand that, but what happens next? What happens next, Your Honor, would be that this would be remanded to the district court and we would be given a reasonable period of time to file a motion for injunction And then the court would weigh the equities under this circuit's precedence on whether or not to issue an injunction The injunction would be against bringing F-35 planes up to the airport? Until the NEPA procedural error had been remedied So once that was remedied, you'd be back looking for another way? I sound like I'm being cute, but I really want to have some sense of Thank you for asking, that is exactly the point I was going to focus on in my prepared arguments Because what I was about to say was, before I reach those two points, I want to address the question of harmless error under NEPA Which I think is what your question really gets at In a way, yeah NEPA is, and I'm relying on what Judge Friendly said, even though he's only here in statute this morning Believe me, he's here in more than his statute Thank you NEPA is essentially a law of procedure The CEQ regulations mandate that certain bases must be touched And if I can use an analogy, if the EIS doesn't touch first base, or it doesn't touch second base Even though the rest of the EIS hits the ball out of the park The agency can't touch home plate And Chief Judge Friendly explained this in 1972 In a case in which he was sitting as a district judge, he was a three-judge panel And the panel was skeptical, just as your Honor has just expressed The panel was skeptical that an order telling the agency it had to touch all the bases Would lead to a different decision And this is what Chief Judge Friendly wrote He said, to permit an agency to ignore its duties under NEPA with impunity Because we have serious doubts that its ultimate decision will be affected by compliance Would subvert the very purpose of the act And that's City of New York v. USA, 337 F. Sub. 150 at 159 Thirty years later, Chief Vermont U.S. District Judge Sessions Made this point in Senville v. Peters in 2009, I'm sorry, 2004 He wrote, to require compliance with the strictures of NEPA procedures is not pedophagy NEPA essentially is a law of procedure The Congress, end of quote, the Congress intended that public disclosure Followed by a non-judicial democratic outcry by the public Would prevent federal agencies from adopting environmentally harmful alternatives Yes, Your Honor The retirement of the F-16s in Vermont as opposed to the other two bases Does it have an impact other than on cost? Does it have any kind of environmental impact to retire those aircraft Rather than build new hangars and let them stay there with the F-35s? The record does not provide an answer to that question, Your Honor Because the entire concept of fleet-wide retirement is not in the EIS So I can't answer your question based on Does it have anything other than the reduced cost of retiring those planes? In other words, is there an environmental impact from retiring those planes As opposed to letting them stay there with the F-35s? There well could be Like how? Well, the record doesn't address that, so I'm just speculating But if the entire fleet is retired Less noise, for one thing Yes, if the entire fleet This gets to one of the issues we did not raise on appeal, frankly, Your Honor But I'd be happy to answer your question This was under count five of the complaint We argued that the fleet-wide retirement plan had been in the works all along And wasn't disclosed in the EIS And precisely the point you're making is the one we tried to make Which was if there are no military aircraft at the Vermont Air Guard Station If they're doing drones, for example, which many Air Guard bases are Or they're doing cyber security There are many alternative roles for an Air Guard That would have drastic improvements, huge improvements In the noise impacts of the Air Guard in Burlington But it's not in the record If it's just cost, then Because that sounds like a positive environmental impact By retiring those planes How is that relevant under Metropolitan Edison? How is that relevant to the EIS? If it's just a cost issue for retiring rather than keeping them? And why isn't cost essentially entirely extraneous to all of this As that is a decision to be made by Congress and the agency? Because the circuit's precedents tell us over and over As in Callaway, the reasons for choosing one alternative over the others Must be disclosed And the CEQ regulation 1502.23 says In the last sentence In any event An environmental impact statement should at least Indicate those considerations Including factors not related to environmental quality Which are likely to be relevant and important to the decision The government's If I may, the government's basic point is The point of the question your honor just asked It's not an environmental impact So under Metropolitan Edison, why did it have to be in there? And I would answer That Metropolitan Edison dealt with the proximate cause issue Of attenuated environmental impacts In that case, people were afraid that They would suffer psychological harm if Three Mile Island opened And the court said that doesn't meet the proximate cause test This is not an impact We're not talking about an environmental impact Or any other kind of impact This is a factor relied on in the decision It is not an impact And Calloway and Siegler and Chelsea They all say Starting with Town of Huntington versus Marsh If this process is going to work The reasons the agency relied on in choosing one alternative As opposed to the environmentally preferable alternative Has to be shared with the public So what's the environmentally preferable alternative? It could be either Jacksonville or McIntyre In one example, there would be zero environmental impacts In the other case, there would be marked reduction in noise What about on Jacksonville and McIntyre? That's what I'm talking about If the planes were based in Jacksonville or McIntyre The EIS said there would be no negative noise impacts at all Those are rural bases They already have noisy aircraft And the flight patterns of the F-35 Would either maintain the noise impacts The same way they are now Or would actually improve upon the present situation So Vermont, Burlington Was the only of the three alternatives that would have negative impacts And they were egregious So the basic point we would make, Your Honor Is that if there is any case Where we're going to insist on touching first base and second base Before you reach home plate It should be a case like this one Where the alternatives have zero harmful impacts And the chosen alternative has egregious You're bringing up Edison to say all these other factors should be considered But they must be approximate cause of the decision, right? So in other words, you're bringing up Edison to say Well, cost, if it's part of the approximate cause Should be evaluated How do you read Metropolitan Edison that way? I read it and re-read it after I read the government's brief And it's apples and oranges, frankly Because we're not talking about an impact that will flow from the decision That's what impact analysis addresses Whether it's an increase in taxes An increase in loss of jobs Traffic congestion that ruins a neighborhood This is not in that category This is a factor the agency is relying on In choosing among the alternatives And Metropolitan Edison has nothing to do with that, frankly We'll give you a couple more minutes if you'd like And obviously we'll do that Sure, well, I would like to talk briefly about the 1506.2 1506.2 requires disclosure of inconsistency With state law or local law And Judge Crawford wrote The notion of a conflict with local measures that are preempted Takes us into the realm of theory And we humbly submit that Judge Leventhal was correct In that the district court's analysis is like saying An EIS that says federal vehicles will go 60 miles an hour On a certain road Without disclosing that the preempted state law speed limit is 25 miles an hour Doesn't satisfy the regulation Judge Leventhal's analysis or the purpose of the statute So every federal project in Vermont has to have as a part of it That needs an EIS has to have as a part of it some Act 250 analysis? If the project would trigger, but for preemption Would trigger Act 250, yes And many of them, Judge Leventhal Nationwide, every local plan or whatever Is always going to have to be part of the EIS analysis That's what the CEQ regulations state And in fact, in this EIS, if you look outside of Burlington The government did do that, for example, at the Mountain Home Air Base They actually looked at the local laws and they said This is how, this is what the inconsistency is I think, if I may The problem I have, and I'm going to tell you, it's just a historical one And I don't know how we address it, but obviously we're wrestling with that Is that the system just is so cumbersome That it becomes this break on anything moving forward And you weren't around, but I was And Mr. Dumont and I go back many years When he was clerking for the judge that I was appearing in front of And we probably practiced opposite each other But anyway, the whole Route 7 coming up the western side of the state Which has had a huge, the fact that it had to have an EIS Has had a huge negative economic impact on the western side of the state And you might not agree with that Yes, and Counselor Mr. Carter, who won that case, eventually lost it I think for the reasons you have articulated That was Harvey Carter, and it was the Conservation Society of Southern Vermont v. Volpe And the holding of this court was that it was unlawful For the Federal Highway Administration to delegate its NEPA responsibilities To Vermont Agency of Transportation He won the case, but lost the war because The Congress, in response, changed NEPA They changed the statute to say it is now legal To delegate to state agencies And here we have CEQ, which by Congress has been mandated To provide the procedures The procedures are on the books If they turn out, as Your Honor says, to be too cumbersome There's an obvious remedy So my conclusion, if I may, was that CEQ Regulation 1500.1, which has been quoted by this circuit many times Says that public scrutiny is essential to implementing NEPA That public scrutiny, quote, in 1500.1 Is taken verbatim from the Congressional record Because that's what Senator Jackson said On the floor of the Senate Senator Jackson said, we're relying on public scrutiny To keep the government from selecting the most environmentally harmful alternative That public outcry is part of what Senator Jackson told the rest of the Senate Is why we're passing this law In this case, public scrutiny of the overall cost factor And of the inconsistency with state law Was impossible Because neither the overall cost factor Nor the inconsistency were mentioned in the EIS Thank you Thank you, Mr. Dumont You've reserved two minutes for rebuttal And would you please give Mr. Toth 16 minutes 16 And as many judges say, you don't feel you need to use all of it, but Thank you, Your Honor And may it please the Court Brian Toth from the Department of Justice Representing the Secretary of the Air Force Plaintiffs ask this Court to take an extraordinary step Of overturning the judgment of the Secretary of the Air Force As to where to base some of the nation's F-35 aircraft The nation's premier strike fighter aircraft And the extraordinary part of that is that they ask for this Court What is the status of the F-35? Is it in service? And if so, how long has it been in service? So I can speak to Burlington in particular And this is not record information No, I was just background information Generally So these are the This decision And there was one decided at the same time To base active combat Active combat command aircraft At Hill Air Force Base in Utah They were the first two basing decisions For active operational aircraft The aircraft have been in use for testing And experimentation and that sort of thing But it is now in service That is to say it may be Active operational? Yeah It will be imminently if it's not already That's what I'm asking, thank you Yes And so the extraordinary part of what plaintiffs ask is here Is that they're invoking NEPA Which is a purely procedural environmental statute That requires agencies to take a hard look At environmental impacts But yet they ask this Court not to invalidate the EIS Based on the failed consideration of environmental impacts But on the Secretary of the Air Force's judgment Based on non-environmental considerations Such as whether this base location Will best fulfill the mission of the Air Force Among other factors Cost was also a factor in the Secretary's decision But those factors are within the purview of an agency To balance and to consider Without being affected by NEPA But And Mr. Dumont obviously can speak for himself But as I understand the appellant's argument The problem that they have with Or the argument that they're making is that That may be well and good But all the factors weren't set out So that the public can also analyze them Or at least be aware of them Well You want to address that? There are two responses to that The regulation that they're relying on 1502.23 says It talks about cost-benefit analysis And it says where such an analysis is prepared All these requirements apply They haven't pointed to anything that resembles A cost-benefit analysis But assuming that they did It's this table on page 44 The appendix that they reproduced in their brief Assuming that triggers the regulation The last sentence merely says It says that the agency Should at least indicate In the EIS Factors that are reasonably likely To be important to the decision Now there are a few different Words in that phrasing That provide the Secretary A good bit of discretion At what to include in the EIS Should It's not shall It's recommended Indicate Under the rule of reason It's a level of treatment That is not this particularized assessment That they're asking for Did the EIS say that the Burlington F-16s would be retired? It said with respect to all bases They were considering reassigning Or retiring the aircraft And Reassigning means moving them From one base to another Correct And that's at various places In the record Including at page A-53 Which is in I believe that's a page From the EIS itself So it was But A-52 says replacement It's a common factor To all bed-down alternatives So in that I don't have the page right in front of me But it does mention Reassigned It's A-52 Reassigned or retired I didn't see the word retirement Section 2.1 Elements of the proposed action Common to all bed-down alternatives Yes I didn't see retirement It seemed like they were all the same So if you turn to the following page A-53 First full paragraph under the table Second to the last line of that First full paragraph It says F-16 and F-15 fighter aircraft Would be either reassigned Or retired by the Air Force And replaced by F-35As But for the two other bases They wouldn't be retired Well, that was later disclosed That was later determined So Was it disclosed in the EIS? That it wouldn't be The aircraft wouldn't be retired At these other bases Yeah, but it would be retired in Burlington? No You know what my question is I mean, was it Was it clear that There were There were apples and apples Or apples and oranges In the EIS About what's going to happen To the F-16s And the three bases Well The EIS didn't make clear That they would be retired Only at Burlington That was the ultimate decision But it was encompassed In the range of alternatives That were being considered here And that's enough And I'd like to make the distinction Between the EIS And the record of decision You know, the EIS Is what's supposed to include The analysis of significant Environmental impacts And it's supposed to focus On the impacts That are most significant So the most detailed treatment Of effects in the EIS Was of noise That was what everybody Was complaining about Spent pages and pages on noise On impacts to housing All sorts of things That the plaintiffs Are chiefly concerned about here But yet they don't challenge As a legal matter EIS did its job It took a hard look At those environmental consequences That were the most significant concerns Raised by the public This issue is very peripheral And it was mentioned in the EIS But it wasn't given the level Of particularized treatment That the plaintiffs Now in hindsight would like Now, the record of decision Came a couple months later That's where the secretary Actually made her decision About where to base the F-35s Now, it wasn't a decision About what to do with these F-16s It says, you know, They will likely be retired They will be retired Okay, that's based on The number of flight hours That are on the aircraft That they will likely approach The point where it's more sensible To retire them By the time the F-35s Are arriving at the base But that decision Those decisions about What to do with those aircraft Have not in fact been made And they will be made In the future And they will be subject To NEPA at that time So there will be You know, there's an additional Opportunity for the secretary To consider whether There are environmental effects Of reassigning aircraft Versus retiring them Certainly the plaintiffs Haven't identified Any environmental effects That they're complaining about here Of retiring Could that be subject Of a separate EIS? It would more likely It would be subject to NEPA It's not likely to be A full blown EIS Because, you know, If they send them to the Boneyard in Tucson There's likely no Environmental effects From scrapping the planes At a licensed facility Established facility That does that sort of work But if they were to Reassign the aircraft To some other location You can imagine There might be noise Created at that new location And so that would have to be Taken into consideration If not in an EIS Then through an Environmental assessment Or through some other way Of complying with NEPA But that decision In the future Would be subject to NEPA And I would like to Go back for a minute To this notion of The environmentally Preferable alternative The CEQ regulations Do require the EIS To identify that And it did here As McIntyre Air Force Base But there's no requirement Under NEPA That the agency has to Provide some Substantial justification For not selecting That alternative The obligation Under Supreme Court precedent Is for the agency To take a hard look At the environmental consequences And once it does so The court's review Under NEPA Is at an end Now this is not a suit Where the plaintiffs Are challenging The sufficiency Of the evidence To support The secretary's Consideration of cost As part of the decision They fully acknowledge That there's evidence In the administrative record Supporting The lower costs At Burlington They just contend That it's not in the right place In the administrative record That it had to be included In the environmental Impact statement But as Judge Joni Suggested with Metropolitan Edison The focus of the Environmental review Is upon environmental impacts Not upon Other types of impacts So you say that was An approximate cause decision That was a Limited to environmental Concerns decision Right? I mean it relates To approximate cause as well But you know The Supreme Court Has only decided About 17 NEPA cases In the entire history Of the statute So you have to Take its decisions Sort of in broad strokes here And understand What the considered Dicta means And so For this You know For this court To accept the Plaintiff's argument That these Economic impacts Had to be given A particularized Treatment in the EIS Would be something Highly unusual Under NEPA And Can I just ask you To follow through on that There seems to be A big disagreement About what the Second circuit cases Have said About the cost factor In the past What's your view Of the important decisions For that? So I think There's There are different ways Of treating those decisions I think one way Is to distinguish them As the emissions They found In the EISs In all those cases Were based on Environmental considerations There's not Not I'm thinking of The Chelsea decision The NRDC against Callaway decision The town of Huntington Decision They all related To Failure to analyze Environmental effects I think in Chelsea And I-291Y The effects were On noise And air pollution In NRDC Against Callaway And town of Huntington Against Marsh It related To placement Of dredge material In Long Island Sound And the question was Whether that material Would disperse Into the ocean And cause environmental Effects Not one of those cases Says that A failure to include A detailed analysis Of economic costs Of the agency decision Not, you know Not economic Cost to the community But economic Cost to the agency And only indirectly To the public Through the Taxpayer Use of taxpayer Money Which is Nationwide, right? Yeah Federal agencies Well, yeah So None of those Cases stand for The proposition That those types Of costs Have to be Considered I think what The early cases Talk about Is a way To review NEPA claims By examining Whether the agency Balanced the costs And benefits Of the decision Kind of generally But Since that time I mean The Supreme Court Has clarified That the way To review NEPA claims Is to determine Whether the agency Took a hard look At environmental Consequences And that The Stryker's Bay Case makes Abundantly clear The agency Is not expected To give preferential Treatment To any particular Alternative Merely because It has fewer Environmental costs Than another alternative Do you agree That other circuits Have concluded Otherwise The fourth And the fifth Circuits seem To say cost Is a factor They say In particular Circumstances Where it Might essentially Bias the agency's Selection of the Alternative By minimizing The importance Of environmental Factors That cost Should be scrutinized But lightly so That's not the argument They're making here They disavow that argument In their reply brief And they say There's no misleading Data that they're Providing I'm struggling To really understand What their claim Is at the end of the day Given the many Concessions they make In their reply brief About what they're not Arguing They're not arguing That the cost savings Was an economic effect Or was an effect Of the decision That had to be analyzed In the EIS And then they say Well, it doesn't need To be analyzed In the EIS Because the data Wasn't available at the time But you have to prepare A supplemental EIS That appears for the first Time in their reply brief And it's forfeited But in any event The supplemental Environmental impact Statement Has its own regulation And we didn't get To cite this In our answer brief Because it only came up In their reply But 40 CFR 1502.9C1 Provides the standard For supplements To the environmental Impact statement And a supplement      It's not required For every piece Of new information That's in the EIS It's not required For every piece Of new information That's in the EIS It's not required For every piece Of new information That comes up And that's essentially Their argument here Is that there was New information On costs That you were considering Ended up as a factor In the record of decision And so you needed To prepare a supplement In addition to being Forfeited That argument is wrong With that And given What you told us About when costs Have to be Under the jurisprudence Have to be considered What would be an example Of how Purely hypothetical Here About how Costs Would have To be considered So the Best examples I can think of In a hypothetical Case would relate To an agency Like the Army Corps of Engineers That actually Its own Substantive regulations Require it to do A public interest Analysis that includes A cost benefit Determination So when it decides Whether to grant A permit For allowing Placement of Dredged fill Like you probably Saw in the Calloway case They have to Determine that The benefits To that Outweigh the costs And if For some reason They have Inflated the Benefits Even non Environmental ones That might Bias their Selection of the Alternative as a Substantive matter And so agencies Under NEPA And the Fifth circuit I think a Couple of the Cases relate To the Corps of Engineers Have focused On economic Costs when they've Been weighed In that Manner by the Agency. But that's Different than what We're talking About here. I'm trying to Put it in the Context of More specifically Bringing in The new jets To burlington And It's hard to Make up a Claim for them That would Require Consideration of Economic costs But if They were to Focus on Environmental costs Of moving the Planes to a New location That might Be a Different argument Altogether. And finally I'll move on Briefly in my Remaining time To the Disclosure of State and Local requirements But I just Wanted to Mention finally There are A number of Nonenvironmental Rationales in The decision Other than Costs. The most Important of Them was The fulfillment Of the Air force's Mission. And when the Air force talks About consideration Of overall Costs, you Can look at The supplemental Appendix on Pages 82 and 83. They talk about The costs of Basing the Aircraft at Jacksonville or Mcintyre to The missions at Those air force Bases and Those missions Would have to Be resourced to Other parts of The air force and That incurs a Cost and impacts The mission of The air force as Well. So it's not Just that the Economic cost Savings was the Sole factor in The agency's Decision. There were a Number of other Ones, none of Which are attacked Here. So that's the Location one, Right, that's Closer to Canada with The joint Missions of Canada? That's Correct. That's correct. And also It's all over, Do it all over Land. All over Land. And the F35 is a One of its Expert features Is attacking Ground targets And it can't Do that over The water that's At the other Bases. So unless the Court has any Other questions On that topic, I'll move Briefly to the Consistency with State and Local requirements. The act 250, The vermont Supreme court Has decided not Just that the Act is preempted But doesn't Apply to this Case. The Court decided That the Basing action Was not Development within The meaning of The act. So the Act wasn't Triggered. There was One of the Several claims That was at Issue in that Case did Deal with The court Addressed it Through a Preemption analysis But the Court said Well, it Started off By saying Basically Accept as True Plaintiff's Allegations that Increase in Noise is a Material change In the Permit. So it Wasn't fully A decision Based on Preemption. It was a Decision the Act didn't Apply. And that's Consistent with What the Air force Said in The eis About act 250. I see my Time is up. So unless The court has Any other Questions. Thank you, Mr. Toth. Mr. Dumont, you Reserved two Minutes for Rebuttal. I'll try not To talk too Fast. The act of 50, as Judge hall May know, But the rest Of you may Not, has Three independent Grounds for Jurisdiction. They're not Necessary for Each other. They are Truly independent. And one Of the Independent Grounds is Material Change. The only Reason the Supreme court Ruled against Us on Material change Was that that Field was Completely Preempted. As to the Citation and Explanation by Fellow counsel Of the I-291 Decision, I think he Misunderstands the Case. The U.S. District court For the E-I-S Had been Inadequate because One of the Factors in That decision Had been Cost. But no Data had Been produced In the E-I-S To support The agency's Ultimate conclusion There as Here, that The project Alternatives were Too costly. The court Stated that the Detailed statement And the Description of Alternatives Serves, quote, To allow Those removed From the Initial process To evaluate and Balance the Factors on Their own. But that District court Opinion, I Think it was Judge Blumenthal In Connecticut, Was just Affirmed without Any discussion By the court Of appeals, Right? It was Affirmed in The appendix, Yes. Yes. Which, as I Understand it means That the Reasoning of the District court Was adopted By the Court of Appeals. No, we Usually say that If we do that. I'm serious. We write a Short per curiam Usually if we're Adopting the Opinion of the District court. The point it's Making is the Same point that The full court Made in Calloway, Which is the Reasons for Choosing one Alternative over The other need To be in The E-I-S. Now, I Quite agree That the Record we Have suggests That the Government did Not produce that Table showing The $22 million Here and the $20 million There until November of 2013. The E-I-S was Done in September. But the Factor, the Overall cost Factor was Part of the Decision. So if We're going To say If we're Going to Use the First sentence Of 15-02-23 Saying if There's cost Benefit analysis That's available It needed to Be referenced, That would Apply in November. But if We're looking At the If the First sentence Of 15-02-23 Is going to Apply to This case, We know That the Data did Exist by November, Two months After the E-I-S. So we Know that Getting rid Of all Of the F-16s In Burlington And leaving Burlington Without a Military plane So it Would be Doing drones And Cybersecurity And Therefore There would Be no Noise Whatsoever. That Appears in The Administrative Record Years Earlier. And That's why That factor Had to be Part of The E-I-S. And as Your Honor Noted, If you Look at A-52, A-53, It Repeatedly Says That the Replacement And Retirement Plan Is In Common. It's A common Scheme For all Three Alternative Sites. Thank you. Thank you. Thank you both. Very helpful Arguments. We will Reserve Decision.